Baldwin, J.
delivered the opinion of the Court.
The force and effect of the defendant’s answer in this case is to be determined, not by treating it as matter of pleading, but as matter of evidence. When a plaintiff comes into a Court of equity, in order to obtain redress in that forum, upon a subject falling within its equitable jurisdiction, the facts charged in the bill and admitted in the answer are to be taken as true, because conceded in pleading. But if the answer goes further and sets up other facts in avoidance of what has been .so admitted, those facts must be established by evidence. And in these respects the rules of law and equity are the same. But equity goes a step beyond the law, and requires that an allegation in the bill which is denied in the ansrver, shall be proved by two witnesses, or one witness and strong corroborating circumstances, and hence the responsive answer is said to be evidence for the defendant. A bill, however, which seeks a discovery from the defendant, in regard to a demand or defence properly cognizable at law, but which cannot be established there for want of proofs, gives to the answer of the defendant a different force and effect. The answer in such a case is to be treated a,s matter of evidence, and not as matter of pleading; and is to be used by the plaintiff obtaining it, as evidence on the trial of the controversy, before the proper forum. According to the English practice that forum is, as a general rule, a Court of common law, the chancery cause usually terminating with the discovery obtained, or the failure to obtain it. With us the general rule is the other way, the Court of equity retaining the cause after the discovery has been obtained, and proceeding to give the *439 proper relief founded upon it; instead of turning the parties over to a common law tribunal, in order that the answer may be used as evidence there; unless, indeed, the discovery was sought and obtained in order to be used in a pending common law action between the parties.
The effect of treating the answer to a bill of discovery as evidence is, that on the trial before the proper forum, whether of law or equity, the whole of it is to be read, if used at all, as the testimony of a witness; but of a witness deposing in his own cause, and whose admissions against himself are to be taken as true, while his assertions against his adversary may be disproved or discredited, and are subject to the ordinary tests of consistency, probability and candour, or the reverse. The answer gains no artificial force by being responsive to the bill : nor is any part of it .pertinent to the discovery to be rejected, because affirmative matter in avoidance of that which is admitted to be true. These are rules of pleading and not of evidence, and the answer to such a bill does not make up issues to be tried in the cause, but furnishes evidence to be used collaterally on the trial of the common law action, or on that which is substituted for it, when the Court of equity, to prevent circuity, expense and delay, undertakes itself to give or refuse redress after the discovery has been made. On the common law trial, so much of the answer as makes in favour of the defendant may be disproved by its context, or by extrinsic evidence, and on the other hand may be sustained by corroborating testimony: and this is equally true of the substituted trial in equity.
The prominent facts disclosed by the defendant’s answer in this case are, that the note in question was transferred by the defendant to the plaintiff, for a valuable consideration, paid by the latter to the former, without endorsement. By declining to endorse, the de *440 fendant avoided the responsibility of an endorser; but he could not, without an agreement or understanding to that effect, avoid the responsibility of warranting the genuineness of the instrument. That is a guarantee which the law imposes upon the transfer, for a valuable consideration, of bills, bank or promissory notes, and other assurances for money, though without endorsement. The person so transferring impliedly undertakes that the instrument is genuine, in other words that it is what it purports to be; and if it turns out to be a forgery, there is a failure of the consideration, which subjects him to the repayment of the money he has received. Nor is it material whether the person making the transfer, receives the consideration for his own use, or for the use of another; unless he is acting as an agent, and discloses not only his agency, but the name of the principal for whom he is acting; in which case he is not a party to the contract, the contract being made with his principal through his agency.
In this case the defendant cannot escape liability for the genuineness of the instrument by the fact that he brought it to the plaintiff pursuant to the request of the latter, that he would bring him good paper for discounting at two per cent, per month. The assertion of this fact is no averment that in the transfer of the note the defendant acted as the agent for the plaintiff, and such an averment would be absurd upon its face, inasmuch as according to his own admission he brought the note for sale and actually sold it to the plaintiff, which in the nature of things he could not do as the plaintiff’s agent. If he was in any wise acting as agent for the plaintiff, it could only have been in purchasing paper for the plaintiff with the plaintiff’s funds, in which case the transaction would have been accomplished by the defendant’s purchasing such paper, which, if he acted in good faith, and without negligence, would thereby have become ipso facto, the property of the plaintiff; but *441 nothing of the kind is pretended: the paper was to be discounted by the plaintiff after it should be brought to him, and he was at liberty to accept it or reject it. The transaction, therefore, could have been nothing else but a sale of the note by the defendant to the plaintiff; and whether it belonged to the defendant or to another person for whom he was acting, was to the plaintiff wholly immaterial. It was only material to the defendant, who if he was not the owner of the instrument, and wished to avoid responsibility as vendor thereof, ought to have made the contract, not in his own name, but in the name of the owner.
That the defendant transferred the note to the plaintiff in the name of another person as owner thereof, is not asserted, nor at all pretended, unless by a side wind, and in this and in other respects the answer is evasive and suggestive, leaving to intendment and inference what the defendant would not venture directly to allege as matter of fact. This is remarkably true in two other important particulars. The defendant in his answer says, that in his second interview with the plaintiff, when he could not obtain from him the money to be paid for the note, he spoke of returning it to “ the drawer,” (in the previous answer withdrawn, to “the owner,”) from which he would have it inferred, though he does not assert it, that the plaintiff was in effect informed that he was purchasing accommodation paper, put into circulation by the drawer for the purpose of raising money, at a discount of more than lawful interest, which would have been a usurious transaction. And it is not until his answer to the amended bill that he discloses the fact, that he derived a benefit to himself from the transaction with the plaintiff, and in disclosing misrepresents it; for the evidence is perfectly satisfactory to prove that he accounted with the maker at a discount of four per cent, per month, while the dis *442 count to the plaintiff was only of two per cent, per month, and that the difference was actual profit to the defendant himself.
Decree reversed, with costs, and decree that the defendant pay to the plaintiff 336 dollars, the amount received from him, with interest thereon from the 11th of June 1834, till paid, and the costs.